**PUBLIC UTILITY COMMISSION OF TEXAS et al, Appellants,**

**v.**

**CITY OF COAHOMA, Appellee.**

**No. 8476.**

Court of Civil Appeals of Texas, Beaumont.

Nov. 13, 1980.

Rehearing Denied Dec. 12, 1980.

 

J. Scott Wilson, Asst. Atty. Gen., Austin, Lyndon Olson, Waco, for appellants.

Pamela M. Giblin, Austin, for appellee.

DIES, Chief Justice.

Our original opinion is withdrawn, and we substitute the following:

We review a suit filed by the City of Coahoma, as plaintiff below, to set aside an order of the Public Utility Commission (hereafter PUC), a state administrative agency created by *Tex.Rev.Civ.Stat.Ann. art. 1446c* (1980), defendant below.

It is undisputed that since 1955 Coahoma has been providing water service not only to residents in the City but also outside the City, most of this outside the City being within the boundaries of Howard County Water Control and Improvement District No. 1 (hereafter "District").

Both the City and the District filed application to the PUC under the provisions of the Public Utility Regulatory Act (hereafter "PURA"), *Tex.Rev.Civ.Stat.Ann. art. 1446c* (1980), for certificates of public convenience and necessity for water service operations. The Commission granted Coahoma a certificate within its city limits and the District within its limits.

The district court set aside PUC's order remanding the case to the commission with the "following directions":

"1. The Public Utility Commission shall issue to the City of Coahoma a certificate of public convenience and necessity for the operation of water service for the area within the city limits of the City of Coahoma and also for at least that area which is outside such city limits but within the Howard County Water Control and Improvement District No. 1 and which lies within two hundred (200) feet of any point along a water distribution line.

"2. The commission shall conduct such further proceedings and shall make such decisions and orders as it may consider to be appropriate with respect to the following matters:

"a. the application of Howard County Water Control and Improvement District No. 1 for a certificate of public convenience and necessity for water service;

"b. sewer service for the areas involved in this case;

"c. water service for that area which is not within the city limits of the City of Coahoma but is within Howard County Water Control and Improvement District No. 1.

"d. other matters which in the discretion of the commission should be considered during such proceedings."

It is from this judgment PUC and the District have appealed.

■ Appellants' first group of points urges the court erred in holding the City of Coahoma was entitled to a "grandfather" certificate under *Sec. 53* of the Act. This section provides:

"On application made to the commission within six months after the effective date of this Act, the commission shall issue a certificate of public convenience and necessity for the construction or operation then being conducted to any public utility actually providing service to any geographical area on the effective date of this Act . . ."

It is undisputed Coahoma filed its application within six months of the effective date of the Act.

*Sec. 3(c)* of the Act provides:

"The term 'public utility' or 'utility,' when used in this Act, includes any person, corporation, river authority, cooperative corporation, or any combination thereof, *other than a municipal corporation*," etc. (Emphasis supplied.)

Clearly then it seems to us, Coahoma must proceed as any other entity under the provisions of *Sec. 54* of the Act in obtaining a certificate of convenience and necessity.

■ Appellee counters that *Sec. 50(2)* of *Article VII* of the PURA implies that a "retail public utility" needs no certificate to continue operating in the same area on the effective date of the Act, and that under

*Sec. 49* of *Article VII* a "municipality" is one retail public utility.

However, the Attorney General's Opinion No. H-812, April 20, 1976, concluded "public utility" and "retail public utility" are not the same. We follow this opinion and sustain these points of appellants.

Paragraph 6 of the judgment of the trial court reads:

"There is no substantial evidence to support the finding of the Commission, stated in the Examiner's 'Opinion,' that the water service in the area in controversy was provided by the Water District."

Appellants' brief urges the issue is "whether the grant of a Certificate of Public Convenience and Necessity [to the Water District] under Section 54 of the PURA was valid and supported by substantial evidence."

" 'Substantial evidence' may be defined as such evidence as will convince reasonable men and on which they may not reasonably differ, that is, competent evidence such as a reasonable mind might accept as adequate to support a conclusion."

1 Tex.Jur.2d *Administrative Law* § 42, at 682-83 (1959).

■ A court "is not obligated to sustain the agency's action if it is supported by a mere scintilla of evidence nor is it bound to consider the testimony of one side without regard to that introduced by the other." 1 Tex.Jur.2d *Administrative Law* § 43, at 684, citing *Railroad Commission v. Shell Oil Co.*, 139 Tex. 66, 161 S.W.2d 1022 (1942); *Trapp v. Shell Oil Co.*, 145 Tex. 323, 198 S.W.2d 424 (1946).

We have carefully examined all the evidence heard by the Examiner of the Commission. To completely summarize it would only unduly lengthen this opinion.

Coahoma, a city of about twelve hundred has about one-half of its water outlets in appellants' water district. By contract until 1985 Coahoma must pay the water cost (obtained from Big Springs), the bonds is-

sued by appellants' district in 1955, and all other expenses. Appellants' water district does not apparently intend to release Coahoma from this contract if its certificate is granted, although it will take approximately one-half of its water income.

The Water District has no clear plans on how it will finance its desired expansion or proposals, and there is only a scintilla of evidence that Coahoma is not adequately serving its present customers within the Water District.

Furthermore, it is clear from the record before the Examiner that both applications involved herein were regarded as competing applications. Appellee, Coahoma, made no real effort to prove a "merit" case under *Sec. 54* of the Act. Therefore, "in the interest of justice" we feel appellee, Coahoma, should be given this opportunity. See *Eli Lilly v. Melton*, 458 S.W.2d 544, 546 (Tex. Civ.App.—Eastland 1970, no writ).

▪ We, therefore, agree with the trial court that the Commission's grant of a certificate of convenience and necessity to the Water District is not supported by substantial evidence, and we reverse and remand this cause to the trial court with instructions to remand the entire cause to the Public Utilities Commission with instructions that the latter decide both applications in accordance with the guidelines and factors contained in *Sec. 54* of the Act. These holdings make it unnecessary for us to consider other points.

REVERSED and REMANDED with instructions.

CLAYTON, Justice, concurring.

I concur with Chief Justice Dies' opinion wherein it is concluded the the City is not entitled to a certificate of public convenience and necessity under the provisions of *Sec. 53* of PURA. It is clear that the "grandfather" certificate under *Sec. 53* of the Act can only be granted to a "public utility," and the City is not such a "public utility."

*Sec. 3(c)* of PURA, in defining the term "public utility," expressly exempts there-

from a municipal corporation. *Sec. 3(c)(4)* further provides that the term "public utility" includes "any municipally owned gas or electric utility ... and does not include any other municipally owned utility unless otherwise provided in this Act."

The authority of PUC to grant a "merit" certificate is controlled by the provisions and applicability of *Sec. 50* of the Act (PURA). A "grandfather" certificate is authorized by the provisions of *Sec. 53*. *Sec. 50(1)* requires a "merit" certificate for a "public utility," but that term does not include a municipality. Therefore, the City in the case at bar cannot obtain a certificate pursuant to *Sec. 50(1)*. *Sec. 50(2)* provides that a "retail public utility" must obtain a "merit certificate" before it is authorized to "furnish ... utility service to any area to which retail utility service is being lawfully furnished by another retail public utility...." A "retail public utility" means and includes a municipality according to the express terms of *Sec. 49* of the Act. Since the acts of the City in our case are such as to come within the provisions and applicability of *Sec. 50(2)* of the Act, it follows that the City must obtain a "merit" certificate pursuant to the provisions relating to the filing and hearing under *Sec. 54*. *Sec. 53*, the "grandfather certificate" section of the Act, applies only to a "public utility" and not to a "retail public utility."

The Legislature has made a distinction between a "retail public utility" and a "public utility." With reference to the term "retail public utility" the Legislature has specifically provided that such term includes a municipality, and the term "public utility" specifically excludes a municipality. The City is only entitled to a "merit certificate" under *Sec. 50(2)* and is not entitled, as a "public utility," to a "grandfather" certificate under the provisions of Sec. 53.

KEITH, Justice, dissenting.

I withdraw the original dissenting opinion filed herein on October 2, 1980, and substitute this in lieu thereof.

For more than twenty years prior to the creation of PUC, the City of Coahoma had

been supplying water to its own citizens and to many persons who resided outside of City but within the District. It timely filed an application under *Section 53 of PURA* for a grandfather certificate authorizing the continuation of the service it was then rendering.

District sought a certificate under *Section 54* authorizing service to Coahoma's customers who resided outside the City. Coahoma was denied its grandfather certificate as to the customers outside its corporate limits and District was granted the right to serve such customers.

City lost about half of its customers in the Commission order and appealed to the District Court where it obtained relief. That judgment has now been reversed and the sole authority therefor is an opinion of a prior attorney general which, in turn, does not cite a single authority. I decline to follow such ruling.

City was entitled to a grandfather certificate under *Section 53*, and the District Court was correct in so holding.[1] Any other construction of the statute, contrary to that of the trial court, leads to absurd results. And, *this record* demonstrates that the Commission did not follow the attorney general's opinion now relied upon by the majority.

Instead, our record shows that PUC granted certificates of convenience and necessity, under *Section 53*, to more than twenty cities, authorizing the continuation of their retail public utility service in providing water. In many instances, the certificate included areas wider than the corporate limits.[2] This order, dated January 27, 1977, was nine months after the opinion of the attorney general mentioned earlier.

The effect of *Section 50(2)* is to preclude one utility from invading another's territory without first obtaining a certificate of public convenience and necessity from PUC under *Section 54.* See and cf. *City of Lubbock v. South Plains Elec. Coop.*, 593 S.W.2d 138, 141 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.); *Southwestern Public Service Co. v. Public Utility Comm'n*, 578 S.W.2d 507, 511 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.). It necessarily follows that a municipality operating a water utility outside its boundaries is entitled to a grandfather certificate under *Section 53* if it otherwise qualifies for such treatment under such section.

Under the construction of the statute, as determined by the majority, a city cannot receive a grandfather certificate for service in an area it has been serving for decades; yet, another entity could invade city's territory with impunity and without regard to its effect upon the city's overall operation.

This inequitable treatment is exacerbated by *Section 54* relating to merit as distinguished from grandfather certificates. This latter section requires PUC to consider the effect on a *public utility* serving the area but does not specifically speak to the question of what consideration is to be given to the effect on a "retail public utility".

Should the result which I espouse in this dissent need further support, I would call upon the rule of law set forth in *Magnolia Petroleum Co. v. Walker*, 125 Tex. 430, 83 S.W.2d 929, 934 (1935), where the Court, quoting from a text, used this language:

"'Where . . . the language of the statute is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty devolves upon the court of ascertaining the true meaning. If the intentions of the Legislature cannot be discovered, it is the duty of the court to give the statute a reasonable construction, consistent with the general principles of law.'"

1. The District Court's first conclusion of law read: "The legislative intent of Article VII of Art. 1446c is that a municipality may be a retail public utility and that for the purposes of Article VII every retail public utility is a public utility."

2. For instance, Item 4 of the PUC Order in Docket No. 21 granted a certificate to: "City of El Paso, the 'present' and 'future water service area' in El Paso County as shown on maps WM 69–75, as amended by map filed 12–30–76, Exhibit 30."

If the Legislature intended to deprive cities of protection from encroachment upon their areas of service after adoption of PURA, it appears to me that it could have chosen more apt language to accomplish its purpose. See and compare *First State Bank of Bedford v. Miller*, 563 S.W.2d 572, 577 (Tex.1978).

The judgment of the District Court was correct and should be affirmed. I respectfully dissent from a reversal thereof.